IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00407-CMA

UNITED STATES OF AMERICA

    Plaintiff,

v.

RYAN CHARLES McCRAW,

    Defendant.

---

# PLEA AGREEMENT

---

The United States of America (the government), by and through Valeria Spencer and Alecia Riewerts, Assistant United States Attorneys for the District of Colorado, and the defendant, Ryan Charles McCraw, personally and through counsel, Colette Tvedt, submit the following Plea Agreement.

## I. AGREEMENT

### A. Defendant's Obligations

### 1. Count of Conviction

The defendant agrees to plead guilty to Count One of the Information, charging a violation of 18 U.S.C. § 2251(a) and (e) – Production of Child Pornography. The Defendant agrees to admit the Forfeiture Allegation contained in the Information. The Defendant has agreed to plead guilty to an Information charging one count of Production of Child Pornography because the government has agreed to dismiss the

1



COURT EXHIBIT 1

Indictment, which charges Coercion and Enticement, which carries a possible life sentence penalty.

2. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 49; or (3) the government appeals the sentence imposed. If any of these criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

3. **Defendant's Abandonment of Right, Title, and Claim to Seized Property**

The United States of America and the defendant hereby agree that any property subject to forfeiture pursuant to 18 U.S.C. § 2253, seized from the defendant or his co-defendants, and currently in the custody and/or control of the Federal Bureau of Investigation, was properly seized and that such property constitutes evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty. As such, the defendant hereby relinquishes all claims, title, and interest the defendant has in such property, specifically identified in the section below, to the United States of America with the understanding and consent that the Federal Bureau of Investigation, or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the Plea Agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the sole and rightful owner of the previously referenced property, and that the defendant hereby voluntarily abandons all right and claim to this property.

4. **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: (1) Canon Power Shot camera, (2) HP Pavilion laptop, serial # MXX5430NGS, (3) Sony Play Station 3, (4)

Apple iPhone 7, A1661, FCC ID: BCG-E3087A, (5) Apple iPhone watch, and (6) Amazon tablet.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

B. **Government's Obligations**

1. **Dismissal of Additional Charges**

If the defendant enters an unconditional plea of guilty to Count One of the Information and otherwise fulfills all obligations outlined above, the government agrees to dismiss the Indictment at sentencing and agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

2. **Acceptance of Responsibility**

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3 point reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate and agrees to make the appropriate motion at the appropriate time.

C. **Effect of Withdrawal from Plea Agreement**

The parties stipulate and agree that the government may unilaterally withdraw

4

from this Plea Agreement under any of the following circumstances: 1) if the defendant does not plead guilty to Count One of the Information; 2) if the Court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal or remand of the count of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered, the crime of Production of Child Pornography, 18 U.S.C. § 2251(a), are as follows:

*One*: That the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

*Two*: That the defendant acted with the purpose of producing a visual depiction of such conduct; and

*Three*: That the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or that the visual depiction was actually transported or transmitted using any

5

means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.[1]

"Minor" means any person under the age of eighteen years.[2]

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means that is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[3]

"Sexually explicit conduct" means actual or simulated:

1. sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or

2. bestiality; or

3. masturbation; or

4. sadistic or masochistic abuse; or

5. lascivious exhibition of the genitals or pubic area of any person.[4]

### III. STATUTORY PENALTIES

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2251(a) is not less than 15 years imprisonment, not more than 30 years imprisonment, not more than a $250,000 fine, or both, per count. 18 U.S.C. § 2251(a). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2251(a), the term of

---

[1] 18 U.S.C. § 2251(a); Fifth Circuit Criminal Pattern Jury Instruction 2.84 [modified]. The Tenth Circuit does not have a pattern instruction for this crime.
[2] 18 U.S.C. § 2256(1).
[3] 18 U.S.C. § 2256(5).
[4] 18 U.S.C. § 2256(2)(A).

6

supervised release is not less than 5 years and up to a term of life. Defendant will be required to pay a $100 special assessment fee. Defendant will also be required to pay a $5,000 special assessment fee unless the Court finds that the defendant is indigent.

The parties do not believe the following provisions are applicable, but if the defendant has been previously convicted under Chapters 110, 71, 109A, 117, or under 18 U.S.C. § 1591, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 25 years nor more than 50 years imprisonment, not more than $250,000 fine, or both; with two such convictions, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 35 years nor more than life imprisonment, not more than $250,000 fine, or both.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

A. **Future Violations of Supervised Release**

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 5 years without credit for pre-release imprisonment or time previously served on post-release supervision; if the defendant commits any criminal offense under Chapter 109A, 110, or

117, or Title 18, United States Code, Sections 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the defendant may be sentenced to not less than 5 years and up to the maximum term of imprisonment for the offense, as set forth above.

B. **Registration under the Sex Offender Registration and Notification Act**

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon her release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was convicted, where he resides, where he is employed, and where he is a student. The defendant understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he is or will be an employee or a student, and information relating to intended travel outside the United States, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable

state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

C. **Restitution**

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(b)(3) and(c) as may be proved by the government or stipulated to by the parties. Defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offense to which defendant is pleading guilty. For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 2259(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C. § 2259(b)(3). Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the presentence investigation report.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to receive compensation for their injuries from the proceeds of insurance or any other source. Defendant understands full restitution will be ordered regardless of Defendant's financial resources. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea. Defendant further agrees to comply with any restitution order entered at the time of sentencing to the extent that he is financially able to do so. Defendant understands

9

imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this Plea Agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the Plea Agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision. In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." § 6B1.4 Comm.

The parties stipulate to the following facts:

10

On July 20, 2017, Longmont Police Department (LPD), Aurora Police Department and the FBI executed a state search warrant on Ryan McCraw's residence in Aurora, Colorado. This search was predicated on a report to LPD by the parents of a 16-year-old victim, Minor #1 of Longmont, Colorado. Minor #1's parents had searched their child's cellular telephone following the discovery of sex toys in Minor #1's room. On the cellular telephone, Minor #1's parents found sexually explicit images of Minor #1 and a video of Ryan McCraw involved in sex acts with a juvenile male. Minor #1 told his parents that two of the males portrayed in these images and videos were boys he recognized and identified by first names (later identified as Minor #2 and Minor #3).

Minor #1 was involved in "puppy training" which appears to be a fetish predominately involving homosexual males. McCraw was the "trainer" or "daddy," with a dominating role, and taught Minor #1, who he nicknamed "Pup Pockets," to behave like a dog and engage in acts of obedience, walking on a leash, sitting in a kennel wearing a dog mask and a dog tail, which was a sex toy inserted into the child's anus which had a dog tail on the end of it. Sex acts also occurred during puppy training between McCraw and Minor #1, which involved bondage.

McCraw provided a more thorough explanation of his style of "pup" training through WhatsApp conversations with Minor #2, who he named "Pup Socks," stating that the initial "pup training" is conducted by a "daddy," "safety" or "trainer." The "daddy" then may become the "master" or "handler" which apparently has a much stricter role than the "daddy." McCraw stated he would not become the "master" until Minor #2 reached 17 or 18 due to his age and living with his parents-this conversation occurred on WhatsApp between Minor #2 and McCraw on May 22, 2017, at 9:30 PM.

11

During the search warrant of McCraw's residence, investigators seized several sex toys, a dog bed, dog kennels, restraining devices, chains, leather BDSM (Bondage and Discipline, Sadism and Masochism) harnesses, children's pacifiers, a computer, a cell phone, and other items. McCraw did not appear to have children of his own.

Investigators gained access to cellular phones belonging to Minor #1 and Minor #2 based on parental consent. Minor #1 and Minor #2 were both forensically interviewed and described the initiation by McCraw into his sex world: wearing a chastity belt designed for men while they were not with McCraw and for as long as he ordered, wearing leashes, sleeping in a dog kennel in his apartment, wearing a "butt plug" that had a dog tail end, engaging in sex acts with McCraw, being bound to the bed naked, having sex with other minors in McCraw's apartment, and knowing that McCraw was taking pictures and videos of the sex acts and sending them online to others.

A third victim, Minor #3, declined to speak to investigators; however, his father provided information demonstrating that Minor #3 had been involved with McCraw since at least approximately February 2016, when Minor #3 was 15 years old. The other minors knew Minor #3 ("Pup Levi") and had sex with him as well. McCraw knew that Minor #3 was 15 years when he met him and that he was going to turn 17 years old in July 2017. Further, an individual who used to be McCraw's roommate stated that while they were roommates in Denver, Colorado, McCraw sometimes plugged an external hard drive into the television, and images stored on the hard drive played on a loop. The roommate observed images of McCraw, Minor #3, and a third party laying in a bed. Minor #3's nude genitalia was visible in these images. The roommate reported this occurred between approximately February 2016 and August 2016.

12

A review of the evidence corroborated Minor #1 and Minor #2's statements that McCraw engaged in sexual acts with his minor victims[5] and recorded these acts with his cellular telephone. McCraw then sent these videos and images to other individuals, including Minor #1 and Minor #2, of the minor victims portrayed in the visual depictions via WhatsApp. For example, McCraw sent a video to Minor #1, depicting Minor #1 performing oral sex on McCraw. Distribution was not limited solely to the victim of the sex act. For example, McCraw sent Minor #1 an image of Minor #2 nude while restrained to a bed. McCraw also requested nude photographs from Minor #1 and Minor #2, both of whom complied multiple times.[6]

---

[5] The conversation between McCraw and Minor #1 began on WhatsApp on 3/29/17 at 7:07:19 PM. They appear to have transitioned after meeting on a dating website, believed to be Recon.

4/8/17 6:03 PM McCraw – "I really do want to take control and ownership over your cock Son" On April 10, 2017, Minor #2 asked how McCraw would like to receive pictures of him masturbating.

4/10/17 9:03 PM McCraw – "Hummm take a pic of your cock hard and then of your cum"
4/10/17 9:19 PM McCraw – Okay Pup, hair just send me a pic of that load"

4/13/17 4:50 PM McCraw – "Well Pup here is the breakdown of the punishments so you know going forward: Playing with cock w/o permission – 10 spanks with paddle   Cumming w/o permission – 5 spankings with belt   Playing or cumming after being told no – 10 Spankings with belt and 10 with Paddle"
4/13/17 4:56 PM McCraw – "It's all part of training and learning Pup. If you want to be my owned Pup one day will have to learn to ask to play with that beautiful cock as it will be mine."

[6] 4/9/17 4:08:49 PM McCraw - sent Minor #1 a photo of a male on his knees wearing black calf high socks. The male is only visible about mid torso and down. The photographer's left hand is visible and touching a curved chrome handle attached to an object inserted in the male's rectum (the content and context of associated conversation portrays the male as Minor #2).
4/9/17 4:21:12 PM Minor #1 – "Awe! Look at him and his little socks" (Note: Minor #2's nickname is Socks, which is known to Minor #1).

4/15/17 8:51:40 PM Minor #1 – "Hey sir can I have the pics/vids you have of me?"

4/15/17 8:57:48 PM McCraw – "Sure I can send them too you"

4/15/17 8:58:03 PM McCraw - sent a photo of a nude male laying supine with his legs spread exposing his genitals. The male is wearing a dark collar and chain leash with a green object in

13

McCraw knew the minor victims' ages prior to engaging in sexual activity with them as demonstrated by WhatsApp conversations. McCraw learned of the victims' true ages on or within the first few days of communication with the minor victims via the Internet. McCraw engaged in sexually explicit conversations with the minor victims including conversations about meeting for sexual intercourse and "pup" training. McCraw maintained the ages of the victims on his cell phone calendar in which he specifies the victims' correct birth years.[7]

---

his mouth. There appears to be a curved, chrome object protruding from his anus. The male is consistent in appearance with Minor #1.

The series of photographs progress with a photo of what appears to be the same male from lying prone with a chrome object protruding from his anus. A photo portrays the male prone with the photographer holding a black paddle-like object. A photo shows the male prone with red marks on his buttocks that appear to be consistent with the shape and size of the paddle previously displayed. A photo shows the male's torso and erect penis. A photo shows the male in red and white briefs, and the photographer's hand is pulling the briefs away from the male's skin to partially expose the penis. A photo depicts a male on all fours with an object protruding from his anus.

4/22/17 12:46:19 PM Minor #1 – "Can I get all the pics you took yesterday/today daddy?" Minor #1 asked for videos, too.

4/22/17 12:49:48 PM McCraw – "Sure son, I took a lot this time"

4/22/17 begin 12:50:22 McCraw – Sent two photos of Minor #1 posing nude, two photos of Minor #1 supine in a kennel posing fully nude with his legs tucked to the rear exposing his penis, a photo of Minor #1 nude and supine, with his genitals exposed, with his left leg bent and stretched left and his right leg bent and up wearing dark gloves with an object in mouth.

4/23/17 4:09:18 PM – McCraw sent Minor #1 a photo of Minor #2 nude on a bed wearing a blindfold and collar, arms restrained and straight out with his genitals exposed. (Note: Minor #2 was shown a sanitized version of this image during his forensic interview, and he advised that he was the male in the image and that McCraw took the picture using McCraw's iPhone.)

[7] Conversations downloaded from Minor #1's phone:
3/29/17 8:20:58 PM McCraw: "My pup is 17 and I have had him since he was 15 so use to dealing with this stuff" (Note:This communication references Minor #3. At approximately 8:10:35 PM, McCraw sent Minor #1 a picture of McCraw and Minor #3 which appears to have been taken at McCraw's apartment. The picture depicts McCraw and Minor #3 side by side exposing their bare chests. Minor #3 is wearing a padlock on a chain around his neck. In a conversation on 3/30/17 at 10:53:01 PM, McCraw describes the chain and lock around Minor #3's neck as follows: "Now the chain and lock around Minor #3's neck too [sic] him 8 months of

14

McCraw knew what he was doing was illegal. He spoke specifically about lying about ages and about hiding the evidence of his relationship to the boys. For example, in this Whatsapp message sent 6/14/17 8:24 PM McCraw stated to Minor #2: "Oh I wanted to tell you Pup, I need you to delete the conversation history on here. Can not be too careful. Also make sure you don't advise anyone about me to be safe".

McCraw's iPhone 7, which was used to produce the child pornography and entice the boys through texts on WhatsApp, was assembled in China. WhatsApp utilizes the Internet to send and receive messages and visual depictions and is headquartered in California. All of the digital storage devices described above,

---

hard training and work to earn. That is his ownership collar showing he is mine and I don't take ownership of a boy unless he has earned it.")

3/29/17 8:31:00 PM McCraw – "I will remind him how lucky he is. You are only a year older so not too much of a difference and I will be training you to be a good Pup and a good Daddies Boy just like him"
3/29/17 8:32:35 PM Minor #1 – "I've only been 16 since December so it hasn't been that long"
3/29/17 8:35:07 PM Minor #1 – "Okay! Yeah my birthday is December XXth so it's been like 3-4 months"
3/29/17 8:45:25 PM McCraw – "Oh ya or long my Pup's birthday is in July, he has been with me for 2 and a half years now, will be 18 soon."
3/30/17 10:22:59 PM McCraw – "Thank you boy I was thinking its funny how you are all around the same age, Minor #2 turned 15 last November, you 16 last December, and Minor #3 will be 17 in July"
3/30/17 10:32:00 PM McCraw – McCraw sends Minor #1 a photo of two males in separate dog kennels. Minor #3 is nude and wearing a gray and white dog mask while on all fours. An unidentified male is nude and curled up on his left side. He appears to be sleeping.

On April 24, 2017, McCraw advised Minor #2 that his birthday was the following day and that he was getting old. Minor #2 replied that McCraw would be old when he was 47. McCraw replied, "that is still 10 years from now.....you will be 25 then."

5/18/17 7:29 PM McCraw – "He [Minor #3] is just in one of his worrying moods I think, worried about us getting caught cause of your age"
5/18/17 7:30 PM McCraw – "Even though he was the same age"

15

including the external hard drive and the minor victims' cellular telephones, were manufactured outside the state of Colorado.

Defendant admits that the production offense involved Minor #1, Minor #2, and Minor #3; that Minor #2 and Minor #3 had attained the age of 12 years but had not attained the age of 16 years; that the production offense involving Minor #1 and Minor #2 involved the commission of a sexual act and sexual contact; that the production offense involved distribution for Minor #1, Minor #2, and Minor #3; that the production offenses involved material that portrayed sadistic or masochistic conduct for Minor #1, Minor #2, and Minor #3; the production offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of the minors to engage in sexually explicit conduct or to otherwise solicit participation by the minors in such conduct; and that the defendant engaged in a pattern of activity involving prohibited sexual conduct with a minor.

## VI.  ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of sentence in this case is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In cases involving child crimes and sexual offenses, Congress passed Title 18, United States Code, Section 3553(b)(2)(A); however, consistent with the Supreme Court's holding in *United States v. Booker,* 543 U.S. 220 (2005), the parties agree that provision does not mandate this Court to impose a within-guidelines sentence.

In order to aid the Court, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The defendant agrees and consents that facts that determine the offense level will be found by the Court and that the Court may consider and use any reliable evidence, including hearsay and the facts outlined in the Presentence Report. The parties further agree that the stipulation of facts in this Plea Agreement will also be used by the Court in determining the sentencing guideline range.

The parties provide the following estimated guideline range for the Court's consideration pursuant to 18 U.S.C. § 3553(a)(4). The range and calculation of that guideline range is an estimate only, and the parties are not bound if the probation department determines that a different guideline range applies. Any estimation by the parties regarding the appropriate advisory guideline application does not limit the positions the parties may take at sentencing on the appropriate sentence for the Court to impose; rather, those limits are set out in Part I of this Plea Agreement. The Court may impose any sentence, up to the statutory maximum, regardless of any advisory guideline range computed, although if the Plea Agreement is accepted, the Court is bound by the sentencing range set forth above in Section I.

**Offense Level for Count One, Minor #1**: The base guideline is § 2G2.1.

  A. The base offense level for this offense is **32**. § 2G2.1(a).

  B. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels. § 2G2.1(b)(2)(A).

  C. Because the offense involved distribution, increase by **+2** levels. § 2G2.1(b)(3).

17

D. Because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by **+4** levels. § 2G2.1(b)(4). The defendant reserves the right to argue that this enhancement doesn't apply.

E. Because the Defendant, for the purpose of producing sexually material used a computer to an interactive computer service to persuade, induce, entice and coerce a minor to engage in sexually explicit conduct, increase by **+2** levels. § 2G2.1(b)(6).

F. The offense level for Count One for Minor #1 is **42.**

**Offense Level for Count One, Minor #2**: The base guideline is § 2G2.1.

A. The base offense level for this offense is **32**. § 2G2.1(a).

B. Because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years, there is an increase of **+2** levels. §2G2.1(b)(1)(B).

C. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels. § 2G2.1(b)(2)(A).

D. Because the offense involved distribution, increase by **+2** levels. § 2G2.1(b)(3).

E. Because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by **+4** levels. § 2G2.1(b)(4). The defendant reserves the right to argue that this enhancement doesn't apply.

F. Because the Defendant, for the purpose of producing sexually material used a computer to an interactive computer service to persuade, induce, entice and coerce a minor to engage in sexually explicit conduct, increase by **+2** levels. § 2G2.1(b)(6).

G. The offense level for Count One for Minor #2 is **44.**

**Offense Level for Count One, Minor #3**: The base guideline is § 2G2.1.

H. The base offense level for this offense is **32**. § 2G2.1(a).

I. Because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years, there is an increase of **+2** levels. §2G2.1(b)(1)(B).

J. Because the offense involved distribution, increase by **+2** levels. § 2G2.1(b)(3).

K. Because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by **+4** levels. § 2G2.1(b)(4). The defendant reserves the right to argue that this enhancement doesn't apply.

L. The offense level for Count One for Minor #3 is **40.**

### Calculation for Multiple Victims under 2G2.1(d)(1):

    i. Offense level for the offense involving Minor #1 is **42.**

    ii. Offense level for the offense involving Minor #2 is **44.**

    iii. Offense level for the offense involving Minor #3 is **40.**

    iv. One Unit is counted for Minor #2. One Unit is counted for Minor #1, as that Group is 2 levels less serious. One Unit is counted for Minor #3, as that Group is 4 levels less serious. The total number of Units is three. Three Units results in a **3** level increase to the Group with the highest offense level. § 3D1.4.

M. Therefore, the combined offense level for this offense involving Minor #1, Minor #2, and Minor #3, as calculated under § 3D1.4, is **47**.

N. No role-in-offense, obstruction and/or multiple count adjustments apply.

O. Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

P. Because the defendant is a repeat and dangerous sex offender against minors, there is an increase of **+5** levels. § 4B1.5. The defendant reserves the right to argue that this enhancement doesn't apply.

Q. The total adjusted offense level for Count One of the Information is **49.**

### Criminal History Category

R. The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative. Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") I. § 4A1.1.

S. The career offender and/or repeat and dangerous sex offender adjustments do not apply.

### Guideline Ranges

T. The guideline range resulting from estimated offense level of **49** and the estimated criminal history category of Criminal History Category I is **life** imprisonment. The imprisonment range is life from the bottom of CHC I to the top of CHC VI. The guideline range would not exceed, in any case, the statutory maximum of **360** months imprisonment applicable to the count of conviction.

U. Pursuant to § 5E1.2, assuming the estimated offense level of **49**, the fine range for this offense would be $50,000 to $500,000, plus applicable interest and penalties.

V. Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

### VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 2/20/19

Ryan Charles McCraw
Defendant

Date: 2/20/19

Colette Tvedt
Attorney for Defendant

Date: 2/21/19

Valeria Spencer
Assistant United States Attorney

Date: 2/21/19

Alecia Riewerts
Assistant United States Attorney